## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MARQUITA WAY,<br><br>        Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, and TRANS UNION LLC,<br><br>        Defendants. | Case No.:<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br><br>  **1. FCRA, 15 U.S.C. §1681** *et seq.* |

Plaintiff Marquita Way ("Plaintiff"), through her attorneys, alleges the following against Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union"):

## INTRODUCTION

1. Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendants Experian, Equifax, and Trans Union, each a consumer reporting agency, for reporting inaccurate information on Plaintiff's credit reports.

///

///

## JURISDICTION AND VENUE

2.      This Court has federal question jurisdiction because this action arises out of violations of federal law.  28 U.S.C. §§ 1331.  Jurisdiction is also proper pursuant to 15 U.S.C. 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

4.      Plaintiff Marquita Way is a natural person residing in the city of Smyrna in Cobb County, Georgia.

5.      Plaintiff is a ("consumer") as defined by the FCRA, 15 U.S.C. §1681a(c).

6.      Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer report*s, as defined in 15 U.S.C. §1681a(d), to third parties. Experian's principal place of business is located at 475

Anton Boulevard, Costa Mesa, California 92626.

7.     Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309.

8.     Defendant Trans Union is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer report*s, as defined in 15 USC 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through their agent for service of process, Prentice Hall Corporation located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

9.     Upon information and belief, Defendants disburse *consumer reports* to third parties under contract for monetary compensation.

10.     At all relevant times, Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns,

principals, trustees, sureties, subrogees, representatives, and insurers.

11.     Any violation by Defendants were not in good faith, was knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

12.     Defendants report consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

13.     Defendants credit reports generally contain the following information: (i) *Header/Identifying Information*: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) *Tradeline Information*: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) *Public Record Information*: this section typically includes public record information, such as bankruptcy filings; and (iv) *Credit Inquiries*: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

14.     Defendants gain access to consumer information from various

sources, including furnishers who provide consumer information to Defendants, and information Defendants independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER.

15.    The information reported by Defendants contribute to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer credit reports.

16.    The majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

17.    These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

18.    Amount of debt owed is a major factor in a consumer's credit score; by reporting a debt as outstanding when it is in fact discharged, a consumer reporting agency creates an impression that the Amount of currently owed debts is

higher than it actually is thereby impacting a consumer's credit score.

19.   Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed.

20.   The more severe, recent, and frequent late payments are the greater the harm to the FICO Score.

21.   In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

22.   Defendants obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of her consumer credit report, as well as the individuals account tradelines.

23.   Defendants had notice of Plaintiff's bankruptcy discharge through independent collection of consumer information as well as from information furnished by tradeline furnishers. Defendants reported Plaintiff's bankruptcy filing and/or discharge in the public record section of their credit reports, as well as in the individual account tradelines.

24.   Defendants are well aware that the effect of a discharge Order in a no

asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

25.     Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Defendants obtain the bankruptcy case information, as well as from information provided to Defendant from furnishers of account/tradeline information.

26.     Rather than following reasonable procedures to assure maximum possible accuracy, Defendants report information regarding pre-bankruptcy debts even if that information ignores or contradicts information already known by Defendants, information provided by furnishers of account/tradeline information, and/or information contained in public court records that Defendants have obtained through its independent efforts or could easily obtain through reasonably available public records.

27.     Defendants are on continued notice of its inadequate post-bankruptcy reporting procedures, including inaccurate balances, and account and payment statuses, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following

a Chapter 7 discharge.

28.    On    or    about October    30,    2017, Plaintiff    filed    for a
voluntary bankruptcy under Chapter 13 of Title 11 of the Bankruptcy Code, in the
United States Bankruptcy Court for the Northern District of Georgia (Atlanta),
case number no. 17-68853-jrs.

29.    On or about January 17, 2020, Plaintiff's bankruptcy was converted to
a Chapter 7 bankruptcy.

30.    There were no objections during Plaintiff's Chapter 7 Bankruptcy, or
proceedings to declare any debt "nondischargeable" pursuant to 11 U.S.C. § 523 et
seq.  There were also no requests for relief from the "automatic stay" codified at 11
U.S.C. §362 et seq. while the Plaintiff's Bankruptcy was pending to pursue the
Plaintiff on any personal liability for listed debts.

31.    Plaintiff was discharged from her Chapter 7 bankruptcy on or about
April 20, 2020.

32.    Upon information and belief, following Plaintiff's Chapter 7
Bankruptcy, Defendants Experian and Trans Union prepared one or more credit
reports concerning Plaintiff. Defendants Experian and Trans Union reported
Plaintiff's Chapter 7 Bankruptcy case information, including the case number,
court, filing date, and discharge.

33.     Upon information and belief, following Plaintiff's Chapter 7 Bankruptcy, Defendant Equifax prepared one or more credit reports concerning Plaintiff. Defendant Equifax reported Plaintiff's Chapter 7 Bankruptcy case information, including the case number, court, and filing date.

34.     Defendants also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, status, and the date of the last status update.

35.     For accounts included in Plaintiff's Chapter 7 Bankruptcy, Defendants are generally required to report the status of these debts as discharged through bankruptcy, unless the furnishers provide information showing that a debt was excludable from discharge.

36.     Nevertheless, Defendants continued to report inaccurate consumer information on credit reports, instead of accurately reporting the status of pre-petition debts as included in or discharged in Chapter 7 Bankruptcy with $0 balances.

37.     Following Plaintiff's bankruptcy discharge, Plaintiff obtained copies of her Experian, Equifax, and Trans Union credit reports to ensure her credit account tradelines and bankruptcy were being reported accurately.

38.     Experian was reporting Plaintiff's Department of Defense Account ("Account 1"), account no. 99999XXXX and opened on or about February 17, 2017 inaccurately.

39.     Experian reported Account 1 with an owed Balance of $787, and Status of "Collection account. $787 past due as of Mar 2020" despite the account having been included in bankruptcy and discharged on April 20, 2020.

40.     Experian also reported a "C" for Collection in March 2020 in Plaintiff's Payment History of Account 1; two months after the bankruptcy was converted to a Chapter 7.

41.     Experian also reported Plaintiff's Department of Veterans Affairs Account ("Account 2"), account no. 999999XXXXXXXXX and opened on or about October 1, 2016 inaccurately.

42.     Experian reported Account 2 with an owed Balance of $566, and a Status of "Collection account. $787 past due as of Mar 2020" despite the account having been included in bankruptcy and discharged on April 20, 2020.

43.     Experian further reported "C" for Collection each month from January 2020 through September 2020 in Plaintiff's Payment History of the Vet Account.

44.     Equifax also reported Account 2 inaccurately.

45.     Equifax reported Account 2 with a Reported Balance of $566, a Past

10

Due Amount of $566, a Scheduled Payment Amount of $48, an Account Status of "COLLECTION", and a debt-to-credit ratio of 141% despite the account having been included in bankruptcy and discharged on April 20, 2020.

46.    Equifax also reported Account 2 as a Collection from April 2017 to August of 2020 in the Payment History.

47.    Trans Union was also reporting Account 1 and Account 2 inaccurately.

48.    Trans Union reported Account 1 as Open with a Balance of $700, a Past Due Amount of $700, and a Pay Status of "In Collection" despite the account having been included in bankruptcy and discharged on April 20, 2020.

49.    Trans Union also reported "Placed for Collection" in the "Remarks" section of Account 1.

50.    Trans Union reported Account 2 with a Balance of $566 and Account Status of "In Collection" despite the account having been included in bankruptcy and discharged on April 20, 2020.

51.    Trans Union also reported Remarks of "AND" and "CLA" from May 2020 through September 2020, and a Rating of "COL" from February 2017 through September 2020 in the Account History.

52.    Upon information and belief, CLA means placed for collection.

53.    Upon information and belief, AND means Affected by Natural/Declared Disaster.

54.    Upon information and belief, COL means collection.

55.    Defendants inaccurately reported this information, e.g., that Plaintiff owes money on discharged accounts, and also reports inaccurate statuses of these accounts, thereby damaging her credit.

56.    On or about November 13, 2020, Plaintiff sent a letter to Defendants Experian and Trans Union disputing their inaccurate reporting of Account 1 and Account 2.

57.    On or about November 13, 2020, Plaintiff sent a letter to Defendant Equifax disputing its inaccurate reporting of Account 2.

58.    On or about November 20, 2020, Equifax responded to Plaintiff's dispute letter. Equifax's response indicated that it had completed an investigation and "verified that [Account 2] has been reported correctly."

59.    On or about November 26, 2020, Trans Union responded to Plaintiff's dispute letter. Trans Union's response indicated that it had completed an investigation and that "A change was made to [Account 2] based on [Plaintiff's] dispute."

60.    Trans Union inaccurately reported Account 2 as 120 days past due

with a $566 Balance.

61.    Trans Union's letter also indicated that it "Verified [Account 1] as accurate and updated."

62.    On or about December 8, 2020, Experian responded to Plaintiff's dispute letter. Experian's response indicated that it had completed an investigation and updated the tradeline but would continue to report Account 2 as a "Collection Account" with Recent Balance of "$566."

63.    Despite previously reporting Account 1, Experian response stated "Disputed item not listed on credit report."

64.    Defendants did not correct the inaccurate information.

65.    Defendants did not investigate Plaintiff's dispute and merely forwarded an automated dispute form to the furnishers. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Defendants through Plaintiff's reported payment history regarding on the accounts, Defendants merely parroted the furnished information despite awareness that the information was factually inaccurate and conflicted with information known by Defendants.

66.    Defendants inaccurately report the status of these debts, even though the debts are in fact discharged, Plaintiff is no longer personally liable for the

debts, and Defendants have actual knowledge Plaintiff filed for and received a Chapter 7 Bankruptcy discharge.

67.     Upon information and belief, Defendants additionally and/or alternatively were on notice of one or more of the involved furnishers' unreliable procedures to properly update the reporting of pre-Chapter 7 debt upon discharge of a bankruptcy and may therefore have reported information contradicted by Defendants' own records and independent knowledge of Plaintiff's bankruptcy discharge in unreasonable reliance on these furnishers.

68.     As a result of Defendants' conduct, Plaintiff has sustained actual damages including but not limited to, embarrassment, anguish, and emotional and mental pain.

69.     Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

70.     Upon information and belief, had Defendants accurately reported the Accounts, Plaintiff's credit score would have been better.

71.     Upon information and belief, Plaintiff applied for and was denied credit opportunities with Syncbcare Credit, First Saving Bank Blaze, Ally Financial, Global Lending Services, Inc., Westlake Service Inc., Prime Motors

LLC, Capital One Auto Finance, American Credit Acceptance, and First Saving Bank due to the inaccurate information Defendants published about Plaintiff in her credit reports.

## COUNT I
### (Violations of the FCRA, 15 U.S.C. § 1681 *et seq*)

72.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

73.    The FCRA requires credit reporting agencies, like Experian, Equifax, and Trans Union to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

74.    In this case, Defendants report the status of these accounts as "collection" or "past due" and include the corresponding balance, and at times late or past due payment statuses, even though these accounts are discharged in bankruptcy and there is no liability or balance owed by Plaintiff.

75.    Defendants knew or should have known of their obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures

concerning the reporting of discharged debts.

76. Defendants have obtained or have available substantial written materials that apprised Defendants of duties and obligations mandated by the FCRA, including where consumers obtain a bankruptcy discharge.

77. Despite knowledge of these legal obligations, Defendants acted willfully in consciously breaching known duties and deprived Plaintiff of her rights under the FCRA.

78. Upon information and belief, Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

79. Upon information and belief, Defendants voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge.

80. The diligence Defendants exercise in recording consumer bankruptcy filings is not replicated in Defendants' reporting of the effect of those orders upon certain accounts, namely, the status of accounts that have been charged-off and sold or transferred prior to the consumer's bankruptcy.

81. Consequently, Defendants report inaccurate, incomplete, outdated, and materially misleading information about Plaintiff, without verifying the

accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possess information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

82.    Defendants possess information from which Defendants should know the reported information is inaccurate, as Defendants include the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

83.    Defendants are also on notice from other account tradelines reported by Defendant that indicate those accounts were included in/discharged in bankruptcy.

84.    Defendants are well aware that discharged debts should not be inaccurately reported as late, past due, or with an outstanding balance or an inaccurate account status after the debt is discharged.

85.    Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and by also failing to report accurate information when Defendant knew or should have known the information

Defendant is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

86.   Defendants Experian and Trans Union inaccurately reported Plaintiff's discharged Account 1 as a Collection with a Past Due and an owed Balance.  Defendants fail to accurately report that there is no liability for these debts and that these debts were included in and/or discharged in bankruptcy.

87.   Defendants Experian, Equifax, and Trans Union inaccurately reported Plaintiff's discharged Account 2 as a Collection with a Past Due and an owed Balance.  Defendants fail to accurately report that there is no liability for these debts and that these debts were included in and/or discharged in bankruptcy.

88.   Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of information pertaining to discharged debts that arose prior to and were included in the consumer's bankruptcy and discharged by that bankruptcy.

89.   In addition to the foregoing, Defendants violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Accounts.

90.   Even after Plaintiff notified Defendant Trans Union of the inaccurate information it included in Plaintiff's credit file, Trans Union continued to

inaccurately report the discharged Account 1 as a Collection account with an owed Balance.

91.     Even after Plaintiff notified Defendants of the inaccurate information they included in Plaintiff's credit file, Defendants continued to inaccurately report the discharged Account 2 as a Collection or Past Due account with a Past Due and owed Balance.

92.     When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information or delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

93.     When conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

94.     Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

95.     Thus, in addition to violating the FCRA by failing to follow reasonable procedures, Defendants additionally violated 15 U.S.C. § 1681i of the FCRA by failing to perform a reasonable reinvestigation of the disputed accounts even after Plaintiff notified them of the inaccurate information each reported in Plaintiff's credit file.

96.     Defendants violations of 15 U.S.C. § 1681i include, but are not limited to the following:

i.      Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

ii.     Failing to consider all relevant information while investigating Plaintiff's dispute.

iii.    Failing to include all relevant information when notifying the Department of Veterans Affairs and Department of Defense of Plaintiff's dispute.

97.     Instead of reasonably reinvestigating Plaintiff's disputes, Defendant Trans Union "verified" Account 1 was reporting accurately and continued to report the discharged Account 1 as a Collection, with a Past Due and owed Balance, even though Trans Union independently knew that the debt was discharged and had a $0 balance.

98.   Instead of reasonably reinvestigating Plaintiff's disputes, Defendants "verified" Account 2 was reporting accurately or incorrectly updated the account and continued to report the discharged Account 2 as a Collection or Past Due account with a Past Due and owed Balance, even though Defendants' independently knew that the debt was discharged and had a $0 balance.

99.   Defendants' inaccurate reporting of Plaintiff's information has caused Plaintiff to suffer from stress, anxiety, headaches, frustration, emotional and mental pain and anguish, financial harm, loss of credit opportunity and a decreased credit score.

100.  Defendants' acts, as described herein, were done willfully and knowingly, or, alternatively, negligently.

101.  Defendants are a direct and proximate cause, as well as a substantial factor in causing actual damages and harm to Plaintiff.

102.  As a result of the foregoing violations of the FCRA, Defendants are liable to Plaintiff for actual damages, statutory damages, attorneys' fees and costs, as described herein and as allowable by law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Marquita Way respectfully requests judgment be entered against Defendants for the following:

A.   Declaratory judgment that Defendants violated the FCRA;

B.   Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C.   Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.   Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F.   Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G.   Any other relief that this Court deems appropriate.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

///

///

///

Respectfully submitted this 11th day of January 2021,

By: *s/Jenna Dakroub*
Jenna Dakroub
Bar Number: 385021
**Price Law Group**
8245 N. 85th Way
Scottsdale, AZ 85258
E: jenna@pricelawgroup.com
Telephone: (818) 600-5513
Fax: (818) 600-5413
*Attorneys for Plaintiff*
*Marquita Way*